The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Pittman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at or following the hearing as:
STIPULATIONS
1. A 4 page Pre-Trial Agreement, which is incorporated herein by reference, was submitted.
2. The following medical records are received into evidence: Presbyterian Hospital records for plaintiff's automobile accident on 1 October 1994 consisting of four pages, records of Dr. Habashi consisting of two pages, and records of Carolina's Medical Center from 1993 consisting of nine pages.
3. Plaintiff's average weekly wage on or about 22 August 22 1994 would be determined by a Form 22 which was received into evidence as stipulated Exhibit One.
4. Plaintiff's Answers to defendants' Interrogatories are received into evidence as stipulated Exhibit Two.
5. The employee's Statement of Injury is received into evidence as stipulated Exhibit Three.
6. Plaintiff's physical examination and personal history form is received into evidence as stipulated Exhibit Four.
7. Plaintiff's Mutual of Omaha claim form is received into evidence as stipulated Exhibit Five.
8. Plaintiff was out of work on the following dates: 23 August 1994; 1 October through 21 December 1994; and from 10 March 1995 through the date of the hearing.
9. The deposition of Robert S. Humble, M.D., taken 5 July 1995, is admitted into evidence.
* * * * * * * * * * *
EVIDENTIARY RULING
All objections raised during the deposition of Dr. Humble were ruled upon in accordance with the law and the Opinion and Award rendered in this matter.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a twenty-eight year old female high school graduate who is also a certified EMT. On 22 August 1994, plaintiff worked in the "roll" department of defendant-employer as a break or fill-in person. Prior to beginning work with defendant-employer in 1993, plaintiff worked for four years at a Waffle House restaurant as a waitress/cook and manager trainee.
2. Prior to 22 August 1994, plaintiff had complained of bilateral knee pain for several years and reported bilateral crepitus to medical providers. Stipulated records of Carolinas Medical Center (Dr. Kane) showed plaintiff to be extremely obese for her size with the right knee having dramatic palpational tenderness over the lateral retinaculum and patellar tendon insertion. Dr. Kane's assessment in January 1993 was patellar tendinitis and lateral retinaculum pain on the right.
3. Plaintiff was subsequently seen in early 1994 by Dr. Habashi to whom she gave a history of pain in the right knee with clicking and locking which started in 1993 and had recently worsened. Dr. Habashi's initial diagnosis was internal derangement of the right knee and chondromalacia. Dr. Habashi prescribed injections, exercise, and gait training for the right knee. Dr. Habashi's follow-up note of 4 April 1994 indicates that plaintiff's right knee gave way continuously and that she fell and injured the right knee. Dr. Habashi's last note of 12 May 1994 indicates that plaintiff was still complaining of pain in the right knee and that there was marked crepitus with favoring of the right leg.
4. Plaintiff's job with defendant-employer involved filling in for other employees in the "roll" department. Part of her job involved working at a station called "Monitor 1" where she monitored pans coming down a conveyor line. It was not unusual for the pan-stacking machine and dough machine to go down or cause an interruption of pans on the line, and it was part of plaintiff's job to place pans on the line in such situations. Such interruptions occurred frequently. Plaintiff also filled in for workers in the "bun" area and the "wrapping" area. All of the positions in the "make up" area involved standing six to seven hours per day, moving around, turning and checking pans, and required being quick on one's feet.
5. Plaintiff, in response to defendants' written discovery, provided under oath a list of problems for which she had to consult a physician or other health professional prior to 22 August 1994. Plaintiff listed ten different health problems dating back to high school, but did not mention her right knee problems for which she had been treated by Drs. Kane and Habashi in 1993 and 1994, respectively. Furthermore, when plaintiff was initially seen at ProMed on 23 August 1994, plaintiff misstated that this was the first time that she had experienced problems with her right knee.
6. Plaintiff alleges that on 22 August 1994, there was an interruption in the dough and pan stacking machines on the conveyor line, and that she turned and felt a "pop" in her right knee while placing pans on the line. In this regard, in the written statement of injury filled out by plaintiff, she reported that she was performing her regular job at the time of the alleged injury and that she was not doing anything differently from the way she usually performed her job duties. Plaintiff's movements in turning while placing pans on the line was a normal part of her job duties. Plaintiff did not experience anything unusual in performing her job duties and there was no occurrence on this occasion which would constitute an interruption of plaintiff's normal work routine or the introduction of unusual circumstances likely to result in unexpected consequences. The only unusual event occurring on this occasion was the pain plaintiff experienced in her right knee.
7. As aforementioned, on 23 August 1994, plaintiff sought medical treatment at ProMed for complaints of pain in her right knee. The initial evaluation was that the injury was a knee sprain. However, plaintiff's condition did not improve with the treatment recommended by ProMed, and she was subsequently referred to Dr. Humble, an orthopedic surgeon, for evaluation. Dr. Humble first saw plaintiff on 12 September 1994 and diagnosed plaintiff's condition as a right lateral meniscus tear for which plaintiff subsequently underwent arthroscopic surgery. Although plaintiff reported to Dr. Humble on 12 September 1994 that she "slipped" and "twisted" her knee while loading pans on or about 22 August 1994, plaintiff did not testify that she "slipped" during the course of her employment with defendant-employer on 22 August 1994. Also, plaintiff did not report to defendant-employer when she completed the accident report that she "slipped" on 22 August 1994, and plaintiff did not report to ProMed that she "slipped" on 22 August 1994. Therefore, the undersigned finds that the plaintiff did not "slip" when she turned and experienced a "pop" in her knee during the regular course of her employment with defendant-employer on 22 August 1994.
8. As a result of her meniscus surgery, plaintiff was unable to engage in work activities for defendant-employer or any other employer until she returned to work on 21 December 1994. As of 21 December 1994, plaintiff had fully recovered from the meniscus surgery, and has sustained no limitations to her right knee as a result of said condition. After 21 December 1994, the additional problems which plaintiff incurred with her right knee are due to patella femoral problems which result from a chronic degenerative condition unrelated to any alleged injury of 22 August 1994.
9. During the time that plaintiff was out of work because of her meniscus surgery, she received short-term disability insurance benefits in the amount of $240.00 per week. Premiums for the short-term disability insurance policy were paid for solely by the defendant-employer.
* * * * * * * * * * *
The foregoing stipulations and findings of fact engender the following additional:
CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an "accident." N.C. Gen. Stat. § 97-2 (6).
2. An "accident" must involve more than merely carrying on the usual and customary duties in the usual way, but rather involves the interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. Harding v. Thomas Howard Company,256 N.C. 427 (1963); see also Davis v. Raleigh RentalCenter, 58 N.C. App. 113, 292 S.E.2d 763 (1982).
3. On 22 August 1994, plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2 (6).
4. Plaintiff is, therefore, not entitled to benefits pursuant to the provisions of the North Carolina Workers' Compensation Act for her injury. N.C. Gen. Stat. § 97-2 et. seq.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. Plaintiff's claim is HEREBY DENIED.
2. Defendants shall pay an expert witness fee in the amount of $235.00 to Dr. Humble.
3. Each side shall pay its own costs.
This is the 4th of March 1997.
 S/ _____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _____________ LAURA K. MAVRETIC COMMISSIONER
DISSENTING:
S/ _____________ THOMAS J. BOLCH COMMISSIONER
DCS/ay
Filed Date: 8/5/97